Good morning, Your Honors. Ajay Mathew on behalf of the petitioner, Harminder Singh. Speak up, please. Yes, Your Honors. The BIA summarily affirmed the immigration judge's decision in this case, so I will turn to the immigration judge's decision. There is a fatal error of due process at the heart of the immigration judge's decision. Even though she found petitioner not credible and required him to provide corroborating evidence, at the same time she did not allow him to provide the corroborating evidence of the testimony of his father, saying that his testimony would not affect the outcome one way or another. This is a clear violation of the petitioner's right to a full and fair hearing. This Court has held in Lopez-Umanzor, as well as Carvey-Ascaroff, that due process principles prohibit an immigration judge from declining to hear relevant testimony because of a prejudgment about the witness's credibility and probative value of the testimony. And the facts of this case are very much... The petitioner conceded that the application was fraudulent. Is that correct? That is true. And what is it that the father could testify to that would be at all relevant? He could have corroborated the testimony. The reason the judge... Corroborated the false testimony? No, the second, the testimony not at the asylum office, which was the false testimony, but the testimony that was given to the immigration judge at the court hearing. And that was... What was to stop him? What's the due process? It looked to me like Singh had plenty of notice and plenty of time that his father was going to be needed and that the judge needed either the father's testimony or medical justification for not having it. There was plenty of time to get a written waiver from the father so that he could testify and be cross-examined. I don't understand what the barrier was to satisfying the immigration judge one way or the other. Well, the judge... Those are good points, but they, in fact, do not form the reason why the judge denied to hear the father's testimony. So the requirements of the waiver... Well, he said no written waiver means no cross, and no cross means not worth getting a direct. Well, again, I would stress that, you know, those were discussed at the hearing, but they did not form any part of the reason for why... What was the barrier? It seemed to me either the father was mentally incompetent to testify or he wasn't. If he was, there was plenty of time because the judge gave a continuance. There was plenty of time to get a note from a doctor saying he's mentally incompetent to testify. If he was competent to testify, there was plenty of time before they ever came to the hearing to get a written waiver from him. So why not? Well, at the first hearing, that wasn't actually a continuance. That was the judge having a scheduling issue, so she had to bump the case. Well, as I recall, maybe I'm mistaken, but I think I read in a hearing where the judge says, well, I'm going to need to hear from the father, and I'm going to give you some time to bring him in. And the lawyer said, well, I think he may be incompetent to testify, and the judge said, well, either have him testify or bring in some, I can't remember if he said, note from his doctor or something like that that explains why he's incompetent to testify. Yes, that happened because, well, the judge, she had another case on the calendar that she had to do before that case. So at that point, she did say, you know, the father might need to testify. Whatever. Right. There's time to do it. And he so he wasn't able to get the proof of incompetence because the father wasn't able to get, on such a short notice, an appointment with his doctor because there was only three weeks between the two hearings. And secondly ---- What bothers me about this whole issue about the father is what's the prejudice? What crucial testimony was the father going to be able to provide that wasn't already in the record? Well, if you look at the judge's reasoning, she said, I would find him credible but for the fact that he hasn't provided any corroborating evidence. Because she did say he testified consistently with the amended claim. But the father's testimony wasn't the only available corroborating evidence, was it? It was in the sense the father was the one who had the most serious act of persecution. It was done to the father. The other family members were they were threatened by the police. But the most the central act in the claim was done to the father. So he was a very critical person. I'm having difficulty seeing why the administrative judge wasn't right. He's the administrative judge was in a position that had to protect the father because the father has a claim. So to do that and to make sure that the father understands he's waiving some rights that may come back to bite him, they require that a waiver be filed. Now the waiver is not filed, although the petitioner's attorney had a month to get it done. Certainly the father was available. And so the ALJ says, well, I can't have him testify here. You don't have this waiver. Let alone that the attorney already told the ALJ that the father's incompetent to testify. Why should we now go back and tell the ALJ, no, you made a mistake and you have to go back and start over, when there was a failure on that basis? Well, the judge, I think the court needs to consider that the petitioner had requested a continuance to get these requirements satisfied at the second hearing. And the judge denied the continuance based on the fact, not on these factors, the lack of a waiver on those things, but because she said the father's testimony was not going to affect the outcome one way or another. So she did prejudge the father's testimony. And that's the reason she denied to continue the hearing. That's the reason she denied to hear the father's testimony, not because of those other three reasons. If those three reasons had formed her decision, then it might be a different case. But those three reasons were part of her decision. Why does the attorney get to be able to do these things? The judge says in 30 days bring me a waiver and we'll hear from the father. The father does not show up. There's no waiver. I don't know of a court that the judge shouldn't be able to say, look, that ends it. You've had your chance. Well, it wasn't clear at the first hearing. The judge's instructions weren't that clear at the first hearing. Yes, she said there would need to be a waiver, but it wasn't stressed whether it could be a written waiver or oral waiver. At the start of the second hearing, the department attorney, the DHS attorney, did agree to an oral waiver on the record. So and then later on, in the midway through that hearing, then he said, oh, I would require a written waiver because there's a different attorney representing the father. And I think at that point the case implicates Carapetain v. Mckacy, 543 F3D 1118, as well as Quimi v. Mckacy, 585 F3D 1289. Are these cases that have been cited in your brief or in the other brief? They haven't been cited in the brief. Well, then you should fill out a gum sheet that the deputy clerk will give you and provide your opponent with a copy of it and three copies for the bench. Okay, Your Honors. In those cases, the court held the denial of a motion to continue should be evaluated on the basis of the importance of the evidence, reasonableness of the immigrant conduct, inconvenience to the court, and the number of continuances previously granted in the case. In this case, the father's testimony was critical. And the reasonableness of the immigration judge's conduct, she had not given clear instructions. She, in fact, acknowledged that in the second hearing that her instructions were not that clear at the first hearing. And she said she apologized if she contributed to any confusion because she didn't specify whether a written waiver would be necessary or just an oral waiver would be necessary. Let me ask you one other question. I know your time is slipping away, and that's on the other issue. If I understand correctly, the petitioner tried this same thing in Canada and wasn't accepted, right? And so he snuck into the United States and is doing the same thing, only this time he made a fraudulent application and perjured himself. Why isn't that sufficient alone to show that the ALJ doesn't have to believe him? It is a serious negative factor, but, you know, the judge herself said that just perjury itself is not a reason for her to find the person not credible. She would still – I mean, in that case, then, why even have a hearing? Why even bother to hear the testimony of the applicant? I mean, so she still is taking into consideration his testimony, but she's saying I don't know the person who holds the hearing, but the ALJ at least can consider that this entire fraudulent conduct from what happened in Canada, what the fraud was on the application, what the perjury was, those are things that can't the ALJ consider in weighing whether or not the ALJ believes the petitioner? She can consider them, but like the judge said, that she is also – she is required also to accept any corroborating evidence. I mean, imagine if a person did file a fraudulent application, but then he's able to bring witnesses. You mean fraud and lying and perjury is okay as long as it's an asylum case? No, I'm not saying that, but if he can provide corroborated evidence to rehabilitate the testimony. Suppose he – suppose in this case the petitioner was able to get a statement from the police saying that this happened or was able to bring the police in to testify, say, yes, it's true, we had beaten and tortured the father. Are we still going to hold the perjury against him? So there's no way we can grant his asylum case. Thank you, counsel. Your time has expired. We'll hear from the government. Good morning, Your Honors. May it please the Court. I'm Jason Patil on behalf of the Respondent, Eric Holder, Jr. The first question presented in this case is whether this record compels reversal of the administrative judge's finding with respect to adverse credibility, where, as the Court has already discussed, there is not only a fraudulent asylum application, but he then signs that fraudulent application under oath, and the application is supported by fabricated documents, including a false statement, and then being sworn by the asylum officer provides a false story. The standard of review here is, of course, the substantial evidence reasonable adjudicator standard under which we are looking to see if the record compels a conclusion by a reasonable fact finder. The fact that a petitioner's counsel suggests to you that it may be the case that these after-the-fact, years-after explanations are plausible doesn't get them over that burden with regard to the substantial evidence reasonable adjudicator standard. The fraud, the perjury is conceded, and that is a very important factor. Now, Petitioner attempts to frame this case as a due process case by focusing in on the fact that the father was not permitted to testify. But as noted, there are a number of very significant bases under which the judge in the reasonable exercise of discretion could permit, could go forward without the father's testimony. The first is there was no notice to the service. This record at page 100 in May of 2003, the judge makes clear that if there is not a notice of this witness that they're going to assume that he does not testify, and there was no notice at all, there was no witness list, and the person just shows up at the hearing. Then, of course, there's the issue of a written waiver of confidentiality, which is pointed out, there's some alleged confusion about whether the waiver must be in writing. But as noted by this panel, the requirement is in the rules. It is part of the controlling regulations at 8 Code of Federal Regulations 208.6. A counsel appearing before the immigration court is presumed to have notice of the rules and regulations. And I would also take issue with the fact that there was not adequate notice. If you look at the administrative record at page 93, the Department of Homeland Security counsel advises Petitioner's counsel that if this individual, the father, is going to testify, that he would ask for a waiver of confidentiality. And at page 94, the judge specifically discusses that requirement with the service and indicates that if he's not going to give a waiver, that that's a factor that will need to be considered. Now, all of these things are sort of pushed off to the fact that we didn't have adequate time. But we didn't have adequate time is not substantiated by the record. The only thing that's substantiated is they showed up, not this counsel, a preceding counsel, and just said, I couldn't get it done. And at that same time, the last issue, which I think is noteworthy, this is not an issue simply of the Petitioner's counsel saying that I don't know what this guy is going to say, he might be competent, he might not be competent, but instead he represents to the court, both in May and in June, that this individual is not even competent to testify. Page 104 of the administrative record, here's the judge talking to Petitioner's counsel, the witness. You told me last time he wasn't competent to testify. The Petitioner's counsel, he is not competent. But I decided to bring him, essentially. It's clear in this circuit that a trial court judge, while he may question the witness himself or hear some questions to determine the competence of that witness, he need not do so. He provided the Petitioner's counsel an opportunity to have the father assessed by a psychologist or a psychiatrist, but Petitioner's counsel did not do so. And so these are exactly the sort of factors which support a decision by the judge not to make a ruling in this fashion. Counsel, I happen to recall a criminal case, I think we published in it, I'm pretty sure we did, where a criminal defendant got on the witness stand and testified, and then when the prosecutor sought to cross-examine him, he just refused. He said, I'm going to claim the Fifth Amendment now. I'm not going to answer any questions on cross-examination. So the judge instructed the jury to disregard his testimony on direct. He appealed to claim denial of due process because of striking his testimony. And as I recall, we affirmed and said if he's not willing to be cross-examined, the judge quite appropriately strikes his direct. Do you happen to recall what that case was and whether there is similar law in the immigration and asylum context? I do not, Your Honor. And with regard to this requirement of confidentiality with regard to asylum applications, there is not in this circuit any clear case discussing the ramification of this action. But here, obviously, the operation of the regulation was to protect the father's confidentiality. The father didn't testify. His application would have been able to proceed separately. On this record, it's not clear what happened as far as the diligence that I've done. No family members so far. You know, there has been no, you know, action that would change the outcome in this case. In addition to the judge's finding with respect to credibility, which obviously frames the entire case because it's a sufficient basis for which this court should uphold all of the denial of the applications, there's also an alternative finding with regard to discretion given the seriousness of the perjury that took place in this case. It's not something that the alien petitioner just committed on a one-time basis. There was a long period of time in which the false story was maintained, and it was only at the point in which he was called back for a re-interview by the service when it had become apparent that the immigration service had learned about the connection between him and his father and the discrepancy between the two accounts that he was called back in, his claim was referred, not granted by the service, to the immigration court. And only then in 2003 do you have what he now claims is the true story. I mean, you've got to wonder in a case like this, as the judge must, let's just focus on practicality. Was the claim in Canada that was denied the right story? What was that? Was it the father's account that was the right story? Is it this application and all these fraudulent documents? Was that the right story? Is this now the right story or a true story? And that's the point. This all goes to the burden of the alien petitioner to provide credible testimony sufficient to support an application for asylum or something else, and it's just not proven here. Just one point with regard to corroboration. The judge does look at corroboration and say that it's important, but there are a couple things to remember about this. The first is that the judge says, even if the father had testified in this case, even if the father had come before the judge and said, Your Honor, I'm sorry. My son lied to you. We filed false documents, but everything that he now says is true. The judge's decision about adverse credibility takes that into account and said, even if the father testified that, that wouldn't be enough. The judge's assessment of corroborating documents rather focuses on the two sisters who were also in the United States. And let me highlight the importance of the two sisters' testimony who also lived in Fremont. This is very key. The only arguable alleged incident of mistreatment that this alien petitioner ever went through in India was one in which his father was not present. The only reason why the police ever spoke to him and threatened him was because the father was elsewhere, and the two people who were present at that time with the alien petitioner were his sisters, also applicants for asylum in the United States, and the judge in ruling on the corroboration requirement is looking for some other bit of evidence that is reasonably available to this alien petitioner, such as the testimony of the only two people who could be available in order to substantiate his account. And that's the sort of corroboration that the judge may have felt would have, perhaps, cut against this perjury and this fraud. The sisters were reasonably available? On this record, they lived with him in Fremont, California. But, you know, there's no indication that the sisters – well, the sisters weren't at the hearing, and, of course, the – although the two – They lived in California after they got there. Right. And although the Petitioner's Counsel asked for the continuance with respect to the father's testimony, he never requested for a continuance. Judge Wallace has a question. Counsel, your adversary indicated the ALJ stated that he would find him credible if there was – if there was corroborative evidence. I don't remember reading that in the record. What was the statement of the ALJ? Did the ALJ commit himself that he would find credibility if there was corroborative evidence? I don't believe that's on this record. The immigration judge does note that in the – that there's an issue with regard to the absence of corroboration, but there's a difference there. It's one thing to say, this person has perjured himself, and there's no corroboration. And it's another thing to say, well, if there were corroboration, I would have disregarded the – the perjury. I think what the immigration judge is saying in this opinion is that had there been some form of corroboration, my analysis may have been different. Not that it would have come out the other way. I can see that my time has elapsed. I thank the Court for its time and would ask that the petition for review be denied. Thank you, Counsel. The case just argued will be submitted for decision.
judges: Wallace, O'scannlain, Kleinfeld